IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

AUDREY RIVAS                                                                                    PLAINTIFF

V.                                         CASE NO. 09-CV-4068

MILLER COUNTY, ARKANSAS; LINDA RAMBO,
individually and in her official capacities as former
Sheriff of Miller County, Arkansas; TOMMY HOLLIN,
individually and in his official capacity as the Chief
Deputy Sheriff of Miller County; and GLENDON
FLOWERS, individually and in his official capacity
as a Miller County Sheriff's Deputy                                                    DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 15). Plaintiff Audrey Rivas has filed a response. (Doc. 18). The Court finds the matter ripe for consideration.

## BACKGROUND

The events giving rise to this action are largely undisputed. Rivas was visiting her aunt, Rebecca Lewis, at Lewis's trailer in the Ward Mobile Home Park. Lewis was intoxicated. The two women got into an argument, and Lewis called the Miller County Sheriff's Department to report that Rivas had threatened her. Miller County Sheriff's Deputy Glendon Flowers, who is a defendant in this case, responded to the call. Lewis reported to him that her niece, Rivas, was beating her two-year old son by hitting him in the mouth and that when Lewis said something to Rivas, Rivas became angry and threatened her. Rivas was no longer at the trailer when Deputy Flowers arrived.

Rivas returned to the trailer shortly thereafter and had a lengthy but friendly conversation

with Lewis's husband outside the trailer. Unbeknownst to Rivas, Lewis again called the Miller County Sheriff's Department to report a disturbance. Because the Miller County deputies were busy dealing with a disturbance at the Miller County Detention Center, Arkansas State Trooper John Rhone responded to the call. While enroute to the call, Trooper Rhone encountered Rivas's vehicle on the highway and stopped her before reaching the trailer park. He told her that he was responding to a call from her aunt regarding a disturbance. Rivas explained that her aunt was intoxicated and angry, and Rhone allowed her to leave without incident. The parties dispute whether Trooper Rhone told Rivas not to return to the trailer park, although Trooper Rhone's affidavit states that he does not remember instructing Rivas not to return and Rivas denies that she was so instructed.

Shortly thereafter, Lewis again called the Miller County Sheriff's Department, requesting that officers come to her residence because Rivas had returned. Sheriff Rambo instructed the deputies responding to the call to arrest Rivas if she was at the trailer park because she had been the subject of three calls. Deputies Flowers and Hillis proceeded to Lewis's trailer, but did not find Rivas there. Rivas acknowledges returning to the trailer park, but denies that she went to her aunt's trailer. Rather, Rivas contends that she purposely avoided her aunt's trailer and proceeded directly to the trailer of her friend, Brandee Hendrix, which is approximately 300 feet away from Lewis's trailer.

The Officers ultimately located Rivas at Hendrix's trailer. Deputy Flowers placed Rivas under arrest and transported her to jail. When Rivas asked what she was being charged with, Flowers told her that he did now know, but that he was under orders from Sheriff Rambo to arrest her and that she would be advised of the charges when they got to the jail.[1]

---

[1] Deputy Hillis did not take part in the arrest. She has filed an affidavit stating that she did not participate because she did not believe that there was probable cause to make the arrest.

Rivas was booked into the Miller County Detention Center at approximately 10:56 p.m. and charged with criminal trespass. The booking sheet notes that Rivas was to be held for sixteen hours "per Chief Hollin" and that she would be required to see a judge before she could post bond.[2] Rivas called a bail bondsman and posted bail at approximately 11:30 p.m. She was released at 3:13 a.m.

About a year later, Rivas filed the instant suit, alleging that her constitutional rights were violated because the officers lacked probable cause to arrest her and because she was held in jail on the instructions of Chief Hollin despite having posted a reasonable bond. She asserts four causes of action: (1) a 42 U.S.C. § 1983 claim premised on violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (2) a corresponding claim under the Arkansas Civil Rights Act for violations of the Arkansas Constitution; (3) common law battery under Arkansas law; and (4) false imprisonment under Arkansas law. Rivas seeks compensatory damages against all Defendants and punitive damages against Defendants sued in their individual capacities.

Defendants have moved for summary judgment, directing all of their arguments at Rivas's §1983 claims.[3] They deny that any of Rivas's constitutional rights were violated and dispute whether any such violation resulted from the custom or policy of Miller County. Defendants also argue that Sheriff Rambo cannot be individually liable for the actions of her deputies under the facts of this case. Defendants further argue that even if Rivas's constitutional rights were violated, they are entitled to qualified immunity. In support of their arguments, Defendants rely on affidavits from Sheriff Rambo and Deputy Flowers. They have also provided the booking sheets, discharge

---

[2] For unclear reasons, there are different versions of the booking sheet.

[3] The Court assumes that Defendants limited their argument to the §1983 claims on the understanding that the Court would decline to exercise supplemental jurisdiction over the state law claims if it were to grant summary judgment on the federal claims.

paperwork, and a copy of Miller County's arrest policy.

Rivas filed a response to Defendants' motion, arguing that there are disputed facts and that a jury could return a verdict in her favor based on the evidence she has presented. She contends that the right not to be arrested without a warrant or probable cause and the right to reasonable bail are both clearly established in the Constitution. She argues that Sheriff Rambo's actions are de facto Miller County policy because Sheriff Rambo is the final decision maker with regard to arrest policy. She also argues that qualified immunity does not apply because the arresting officers knew that they lacked probable cause. In support of her opposition to summary judgment, Rivas relies on, *inter alia*, her own affidavit, the affidavits of Brandee Hendrix, Trooper Rhone, and Deputy Hillis, and the interrogatory responses of Sheriff Rambo and Deputy Flowers.

## SUMMARY JUDGMENT STANDARD

FED. R. CIV. P. 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008). To defeat a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

**Section 1983 Claims against Defendants in their Individual Capacity**

Rivas has sued the three Miller County Sheriff's Department Officials in their individual capacities. Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.* at 166-167.

Defendants assert that they are entitled to qualified immunity on the claims against them in their personal capacities. Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The analysis of qualified immunity involves two steps:

> First, we ask whether the facts as asserted by the plaintiff show the officer's conduct violated a constitutional right. If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).

Rivas alleges that her constitutional rights were violated when, *inter alia*, she was arrested

for criminal trespass without a warrant or probable cause.[4]  "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). Here, no warrant authorized Rivas's arrest.  Thus, the question boils down to whether Defendants had probable cause to arrest Rivas, as the term "probable cause" is conventionally understood by the federal courts in civil rights context.  If probable cause existed, Rivas's arrest and detention were justified; if such cause did not exist, the arrest and subsequent detention were unlawful and violated Rivas's constitutional rights.  *See Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976).

"In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." *Anderson v. Cass County, Mo.*, 367 F.3d 741, 745 (8th Cir. 2004).  Each case involving a question of probable cause must be decided on its own facts. *Garcia*, 531 F.2d at 861. "Where the facts are in dispute or where they are subject to different inferences the question of probable cause is for the jury; however, where the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court." *Id*. (citations omitted).

In determining whether there was arguable probable cause to arrest Rivas, the Court starts at square one: the statute cited for Rivas's arrest.  Rivas was arrested for criminal trespass, which is defined in Arkansas as purposely entering or remaining unlawfully in or upon a vehicle or the

---

[4] It is not entirely clear if Rivas's allegations concerning her detention are part of an ongoing constitutional violation based on the arrest or a separate violation.  In any event, although Defendants briefly discuss Rivas's allegations of unreasonable detention in the fact section of their memorandum of support, they provide no argument as to whether or why any claims based on the detention should be dismissed.  Accordingly, the Court will not reach the detention aspect of Rivas's § 1983 claims.

premises of another person. ARK. CODE ANN. § 5-39-203. The difficulty for Defendants' motion is that Rivas was arrested while inside a separate private home located several hundred feet away from where the complainant lived. Although the Sheriff's Department had received three calls involving Rivas, she was not unlawfully upon the premises of another at the moment of arrest. Thus, probable cause for the arrest would have to be based on the overall circumstances of the calls and arrest rather than direct observation of illegal conduct.

The Court is of the view that a reasonable jury could conclude that Lewis's calls did not provide probable cause for Rivas's arrest. Rivas denies that she returned to Lewis's residence after speaking with Trooper Rhone, and the officers did not encounter her at Lewis's trailer. Furthermore, as Rivas notes in her opposition, there is no assertion that she was acting in a belligerent manner, that she was uncooperative with officers, that she was intoxicated, or that she posed any threat whatsoever to anyone. Given these facts, a jury could conclude that there was no legal basis to arrest Rivas for criminal trespass. Of course, this is not to say that a jury will necessarily find that the officers lacked probable cause to arrest Rivas. Three calls, particularly on a night when there were issues at the Detention Center and officers may not have been available to respond to repeated calls, may be enough to establish probable cause. Simply put, the facts are subject to different inferences and therefore the question of probable cause is for the jury. *Garcia*, 531 F.2d at 861.

To the degree Defendants challenge the knowingness of the violation, the Court also finds that Deputy Hillis's affidavit is sufficient to raise an issue of material fact with regard to whether the alleged constitutional violation was knowing. *See Briggs*, 475 U.S. at 341. Deputy Hillis states that she believed that probable cause was lacking and that Deputy Flowers did as well, but felt compelled to make the arrest because of Sheriff Rambo's order. Based on this testimony, a jury could conclude

that Rivas was arrested even though the officers knew they lacked probable cause to arrest her.

Defendants also contend that Sheriff Rambo is entitled to summary judgment on the personal capacity claims against her. They argue that even if Rivas's constitutional rights were violated, no liability can attached based on theory of vicarious liability for her subordinates' acts and that the facts do not support a failure to train or coordinate theory. The Court is somewhat baffled by Defendants' argument. Rivas alleges that Sheriff Rambo directed her arrest, and the various affidavits all state that Rivas was arrested on Sheriff Rambo's instruction. In other words, Rivas has linked Sheriff Rambo directly to the constitutional violation. Accordingly, Sheriff Rambo could be liable in her personal capacity without resorting to vicarious liability or a failure to train theory.

**Section 1983 Claims against Miller County[5]**

Defendants argue that the complaint does not identify any alleged custom or policy of Miller County that resulted in a violation of Rivas's constitutional rights. According to Defendants, even if the Court were to assume a constitutional violation, Rivas cannot show that a policy or custom of Miller County was the moving force behind the violation.

Defendants are correct that in order to make out a case of municipal liability against Miller County, Rivas must show that her alleged constitutional injuries were caused by a policy or custom of the municipality, the implementation of which amounted to deliberate indifference to her

---

[5] In this case, Rivas has sued both Miller County and three Miller County Sheriff's Department Officials in their official capacities. A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Because the official-capacity claims against Sheriff Rambo, Chief Hillon, and Deputy Flowers are functionally equivalent to the claim against Miller County, see *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999), they are dismissed as redundant. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("The district court correctly dismissed the claim against [defendant in his official capacity] as redundant to the claim against the School District.").

constitutional rights. *Lund v. Hennepin County*, 427 F.3d 1123 (8th Cir. 2005). The flaw in their argument is that municipal officials who have final policymaking authority may subject not only themselves, but also the government, to liability under § 1983. *See Angarita v. St. Louis County*, 981 F.2d 1537, 1546-47 (8th Cir.1992). As Defendants acknowledge in their memorandum of support, "[s]eparate Defendant, Linda Rambo, as the former Sheriff of Miller County, Arkansas, was the constitutional officer responsible for the administration of the jail and law enforcement activity in Miller County, Arkansas." Accordingly, her actions could establish municipal liability. *See Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007). Furthermore, the evidence establishes that Sheriff Rambo's instruction was the moving force behind Rivas's arrest. In effect, by deciding that Rivas was subject to arrest because she had been the subject of three previous calls, Sheriff Rambo established a "three call rule" as Miller County's de facto policy, and that policy lead to Rivas's arrest. Because, as discussed, a reasonable jury could conclude that the three calls from Lewis were insufficient probable cause to arrest Rivas, Rivas may be able to show that her constitutional rights were violated as a direct result of the County's policy.

## CONCLUSION

Upon consideration, the Court finds that Defendants' Motion for Summary Judgment against Plaintiff should be and hereby is **DENIED**. The claims against Sheriff Rambo, Chief Hollin, and Deputy Flowers in their official capacities are **DISMISSED** as redundant to the claims against Miller County.

IT IS SO ORDERED, this 10th day of November, 2010.

      /s/ Harry F. Barnes
      Hon. Harry F. Barnes
      United States District Judge